AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
для
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Six Cellular Phones in the Possession of Homeland Security Investigations at 880 Front Street, Suite 3200, San Diego, California

Case No. 19MJ0207

**FILED**
JAN 1 7 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances |
| 21 U.S.C. § 963 | Conspiracy |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Kerstyn Kowalski
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/17/19

*Judge's signature*

City and state: San Diego, California

The Hon. Linda Lopez
*Printed name and title*

# AMENDED AFFIDAVIT IN SUPPORT OF SEARCH WARRANT[1]

I, Kerstyn Kowalski, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations ("HSI"), having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic devices (collectively referred to herein as the **Target Telephones**), and seize evidence of violations of Federal law, namely 21 U.S.C. §§ 952, 960 and 963, as further described in Attachment B:

   a. One Apple iPhone, Generation 5S and Model A1453, with IMEI Number 352032065433929, as further described in Attachment A-1 (hereinafter "**Target Telephone 1**"); and

   b. One Apple iPhone, Generation 5S and Model A1533, with IMEI 013880002911394, as further described in Attachment A-2 (hereinafter "**Target Telephone 2**").

---

[1] On December 21, 2018, I submitted a substantively similar application, which I believed to be true and accurate to the best of my knowledge and belief at the time, and obtained warrants for the **Target Telephones**. *See* 18-MJ-6384, 6390, 6391, 6392, 6393, & 6394. My December 21 application did not note that investigators had made some efforts to obtain information from **Target Telephones 4** and **6**; investigators had conducted an initial border-related search of the former, and had downloaded and reviewed the contents of the latter after gaining written consent from its owner, SEVILLA. Since obtaining the noted warrants, I am also aware that investigators conducted forensic downloads of **Target Telephones 1** and **2**. None of the information obtained as a result of these noted efforts is included herein, and apart from the noted efforts to review **Target Telephones 4** and **6**, investigators have not searched the contents of the **Target Telephones**. Instead of moving forward with searches, I am submitting this amended application to ensure that the Court is aware of all relevant information before authorizing searches. Other than the information noted in this footnote and the section "**Prior Attempts to Obtain This Evidence**," this affidavit is identical to the one submitted in my December 21 application.

  c. One Samsung cellphone, Model SM-J727R4, with IMEI 35599308179644, as further described in Attachment A-3 (hereinafter "**Target Telephone 3**").

  d. One ZTE cellphone, Model N9137, with IMEI 99000890441421, as further described in Attachment A-4 (hereinafter "**Target Telephone 4**").

  e. One Apple iPhone, Generation 5S and Model A1453, with IMEI 352031065959990, as further described in Attachment A-5 (hereinafter "**Target Telephone 5**").

  f. One Apple iPhone, Generation 7, and Model A1660 with IMEI 89014103271148912767, as further described in Attachment A-6 (hereinafter "**Target Telephone 6**")

This search supports an investigation and prosecution of Carlos Ballina-Merrem ("BALLINA"), Miguel Sevilla-Almanza ("SEVILLA") and Skylar Adams ("ADAMS") for the crimes mentioned above. A factual explanation supporting probable cause follows.

 2. Officers with the Department of Homeland Security, United States Customs and Border Protection, Air and Marine Operations Unit ("CBP-AMO") seized the **Target Telephones** from BALLINA, SEVILLA, and ADAMS on November 11, 2018, when they were arrested at the Pepper Park Boat Ramp in National City, California, for importing a controlled substance, in violation of 21 U.S.C. §§ 952 and 960. The **Target Telephones** are currently in the possession of Homeland Security Investigations ("HSI") and are being maintained in the HSI San Diego Metro Vault, located at 880 Front Street, Suite 3200, San Diego, California 92101.

 3. Based on the information below, there is probable cause to believe that searches of the **Target Telephones** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

 4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain search warrants, it does not contain all of the information known

to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other HSI Special Agents (who are experienced in the area of drug investigations), and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations. I have been employed with HSI since November of 2017 and am currently assigned to the San Diego Marine Task Force (the "MTF"). The San Diego MTF is multi-agency initiative aimed at identifying, targeting, and eliminating vulnerabilities to the security of the United States related to the San Diego seaport complex, as well as the surrounding transportation and maritime corridors.

6. In 2014, I graduated from Northeastern University with a Bachelor of Science degree in Criminal Justice. Since then, I have graduated from the United States Border Patrol Academy where I was subsequently employed as a Border Patrol Agent in San Diego, California, for approximately three years. Most recently, I graduated from the Criminal Investigator Training Program and HSI Special Agent Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for smugglers of controlled substances and other drugs (collectively, "drugs") to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution quantities of drugs, such as marijuana, cocaine, heroin, and methamphetamine. Typically, "load drivers" – those people who smuggle drugs across the border from Mexico into the United States are in telephonic contact with co-conspirators

3

prior to and following the crossing of the load vehicle, at which time they receive instructions on matters such as on how to cross and where and when to deliver the drugs. Drug smugglers and their organizations use cellular telephones, in part, because such phones facilitate real-time communications from anywhere the participants in the smuggling are located (as is generally true about cellular phones), and because these individuals believe law enforcement has difficulty accurately tracking the inbound and outbound phone numbers for calls and texts placed to and from cellular telephones.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

a. Drug smugglers use cellular telephones because they are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

b. Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

c. Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

d. Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

e. Drug smugglers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for certain cellular telephone subscribers (known as Global System for Mobile Communications, or "GSM," subscribers). Such data includes user identity, location, phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with such a telephone.

## FACTS IN SUPPORT OF PROBABLE CAUSE

10. On November 11, 2018, officers with CBP-AMO received information that a pleasure-craft type vessel (the "Boat") had broken down near the entrance to the San Diego Bay and needed assistance being brought into harbor. Further, CBP-AMO officers received information that the Boat was not subscribed to a local towing service and that a third party—*i.e.*, not a person on the Boat—arranged to pay cash for the tow.[2] From my training, experience, and consultation with other investigations, it is my understanding that this is unusual, as many boats requiring service in the San Diego area have subscriptions to towing services. (Such subscriptions are analogous to car owners having "Triple-A" subscriptions.)

11. CBP-AMO officers watched the Boat receive a tow to the boat ramp at Pepper Park in National City, California (the "Pepper Park Boat Ramp"). I am aware that the Pepper Park Boat Ramp is located in the southeast quadrant of San Diego Bay. While the Boat was being towed, CBP-AMO officers saw two people on it.

12. CBP-AMO officers positioned a Marine Unit ("M-816") near the entrance to San Diego Bay and watched the Boat as it was being towed into the Pepper Park Boat Ramp. At the same time, land-based CBP-AMO officers were watching the Pepper Park Boat

---

[2] CBP-AMO received the information from a source of information (the "SOI") that is not being disclosed in this warrant in light of ongoing investigative efforts. Investigators regard the SOI as reliable in light of past interactions. The SOI is not providing information in exchange for a benefit.

5

Ramp. At about 4:50 p.m., these land-based agents saw BALLINA arrive, driving a 2003 white Ford F-350 (the "Truck") with an attached boat trailer.

13. While conducting surveillance of BALLINA, CBP-AMO officers confirmed that the Truck was registered to Miguel Sevilla-Almanza, (*i.e.*, SEVILLA). They also saw that SEVILLA has a lengthy history of crossing the border between the United States and Mexico, and that BALLINA had driven the Truck into the United States from Mexico the day before the events described in this affidavit.

14. CBP-AMO officers also checked the registration number displayed on the Boat as it was coming into the Pepper Park Boat Ramp, and found that the registration information did not match the make model or size of the Boat. Specifically, the registration information was for a 23-foot "Hurricane" boat, but the Boat is a 25-foot center-console boat. Further, CBP-AMO officers found that SEVILLA, the registered owner of the Truck, was also the registered owner of the Boat. From my training and experience, I am aware that drug traffickers will place vehicles in the names of third parties, including those people actually trying to import drugs into the United States. For example, I am aware that people importing drugs via cars at Ports of Entry will often be listed as registered owners of the cars.

15. Upon the Boat's arrival to Pepper Park, CBP-AMO officers watched BALLINA back the Truck and trailer into the water to retrieve the Boat. Once the Boat was placed on the trailer, BALLINA paid the towing service in cash.

16. At this point, CPB-AMO officers approached the Truck and the Boat. BALLINA was in the driver's seat of the Truck. CBP-AMO officers also found a second person in the Truck – SEVILLA – and subsequently confirmed through questioning that he had been on the Boat when it came in to the Pepper Park Boat Ramp. CPB-AMO officers initially could not find the second person who had been on the Boat with SEVILLA, but found ADAMS in a nearby public restroom a few minutes later; subsequently, through questioning SEVILLA and ADAMS, the officers confirmed that ADAMS had been the second person on the Boat.

17. CBP-AMO officers detained the Boat and secured BALLINA, SEVILLA, and ADAMS. In a subsequent field interview, SEVILLA told the CBP-AMO officers that they had been smuggling "something" from Mexico, but claimed not to know what it was. Further, ADAMS said he had met SEVILLA two days earlier (and otherwise claimed not to know what was going on). BALLINA indicated that he had paid $850 in cash for the Boat to be towed.

18. CBP-AMO officers then boarded the Boat, where they saw and smelled fresh fiberglass; they also saw that the Boat appeared to have a new floor. The officers opened the center-console door of the Boat and smelled an odor of marijuana. The officers then cut a hole in the floor of the Boat. The CBP-AMO officers found packages containing a leafy green substance that was immediately recognizable as marijuana. In total, the CBP-AMO officers found about 560.20 kilograms of marijuana.

19. Following the seizure of the marijuana, ICE-HSI Agents provided BALLINA, SEVILLA, and ADAMS with their *Miranda* rights. SEVILLA told the officers that he knew to look for the Truck when he got to San Diego. SEVILLA explained that the people who recruited him had shown him the Truck before he left Mexico. He also said that BALLINA was driving the Truck when they showed it to him. He also indicated that the same people had placed ADAMS on the Boat with him.

20. At the time of their arrest, BALLINA was in possession of **Target Telephone 1** and **Target Telephone 2**; ADAMS was in possession of **Target Telephone 3, Target Telephone 4** and **Target Telephone 5**; and SEVILLA was in possession of **Target Telephone 6**.

21. Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling in near the border, I understand that drug smugglers will seek to use boats to smuggle drugs from Mexico to the United States. Such smugglers will secrete drugs into hidden spaces of boats, and will cover over the hidden areas with fresh fiberglass and paint. Such boats will drive north from Mexico and seek to land in discrete areas in the San Diego area (or points

north, if possible). When they arrive, smugglers will attempt to pull the boats from the water and transport them to discrete places quickly, so that they can remove the drugs and send or transport them to other locations for distribution.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the drug trafficking activities of **BALLINA**, **SEVILLA**, and **ADAMS** is stored in the **Target Telephones**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import marijuana or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of marijuana or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of marijuana or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of marijuana or some other federally controlled substance from Mexico into the United States;

    e. tending to identify the movement of proceeds associated with the trafficking of marijuana or some other federally controlled substance that was imported from Mexico into the United States;

    f. tending to identify the user of, or persons with control over or access to, the **Target Telephones**; and/or

   g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

23. Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of the **Target Telephones** is from September 11, 2018 up to and including November 12, 2018 (i.e., the day after the events described in this affidavit).

## **METHODOLOGY**

24. It is not possible to determine, merely by knowing the cellular telephones' make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

9

Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrants, I will collect the **Target Telephones** and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

27. On November 11, 2018 – the day of the events described in this affidavit – a Special Agent with United States Coast Guard Investigative Service downloaded **Target Telephone 4** pursuant to border-search authority, and **Target Telephone 6** after investigators received written consent from SEVILLA, the owner.

28. Following the issuance of the initial warrants on December 21, 2018, investigators conducted forensic downloads of **Target Telephones 1** and **2**, but the contents of those downloads have not been searched.

29. Investigators have not yet tried to conduct forensic downloads of **Target Telephones 3** or **5**.

30. Under this warrant, investigators will (1) conduct forensic downloads **Target Telephones 3** through **6**, (2) review the forensic-download files of all six **Target**

10

**Telephones**, and (3) review the **Target Telephones** themselves, all for the items described in Attachment B.

31. Though investigators have done some searches of **Target Telephones 4** and **6**, I am seeking authority to search those phones because the tools to be used are likely to be more thorough (for instance, by identifying and retrieving deleted text messages), and because the passage of time since those phones were seized makes the application for warrants appropriate, to ensure that all searches are lawfully conducted.

## CONCLUSION

32. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that BALLINA, SEVILLA, and ADAMS used the **Target Telephones** to facilitate the offenses of importing controlled substances and conspiracy. The **Target Telephones** were likely used to facilitate the offense by transmitting and storing data that constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

33. Because the **Target Telephones** were promptly seized following the arrests of BALLINA, SEVILLA, and ADAMS, there is probable cause to believe that evidence of the offenses continues to exist on the **Target Telephones**. I believe that the date range for this search is from September 11, 2018, up to and including November 11, 2018.

34. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Telephones**, as described in Attachment A, and

///
///
///

seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
KERSTYN KOWALSKI
Special Agent, Homeland Security Investigations

Subscribed and sworn to before me on this 17 day of January, 2019.

_____
THE HON. LINDA LOPEZ
United States Magistrate Judge

# Attachment A

## *Items to be Searched*

The items to be searched are described as follows:

- **Target Telephone 1**
  Apple iPhone – Generation 5S
  IMEI 352032065433929
  Model No. A1453

- **Target Telephone 2**
  Apple iPhone – Generation 5S
  IMEI 013880002911394
  Model No. A1533

- **Target Telephone 3**
  Samsung cellphone
  IMEI 35599308179644
  Model No. SM-J727R4

- **Target Telephone 4**
  ZTE cellphone
  IMEI 99000890441421
  Model No. N9137

- **Target Telephone 5**
  Apple iPhone – Generation 5S
  IMEI 352031065959990
  Model No. A1453

- **Target Telephone 6**
  Apple iPhone – Generation 7
  IMEI 89014103271148912767
  Model No. A1660

The **Target Telephones** are currently in the possession of the Homeland Security Investigations, San Diego Metro Vault, located at 880 Front Street, Suite 3200, San Diego, California 92101.

1

## Attachment B

### *Items to be Seized*

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, from September 11, 2018 up to and including November 12, 2018:

   a. tending to indicate efforts to import marijuana or some other federally controlled substance from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of marijuana or some other federally controlled substance from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of marijuana or some other federally controlled substance from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of marijuana or some other federally controlled substance from Mexico into the United States;

   e. tending to identify the movement of proceeds associated with the trafficking of marijuana or some other federally controlled substance that was imported from Mexico into the United States;

   f. tending to identify the user of, or persons with control over or access to, the **Target Telephones**; and/or

      g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.